UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY MASSENBURG,

_Petitioner,_

v.

BRUCE DAVIS,

_Respondent._

Civil Action No.
20-9270 (MEF)

<u>SEALED</u>
<u>OPINION</u>

## <u>Table of Contents</u>

I.   <u>Background</u>
     A. <u>Trial Evidence</u>
     B. <u>Procedural History</u>
     C. <u>The Petition</u>
     D. <u>The Court's Approach</u>

II.  <u>Exhaustion and Standard of Review</u>
     A. <u>Exhaustion: General Principles</u>
     B. <u>The Claims Here Were Exhausted</u>
     C. <u>Standard of Review for Exhausted Claims</u>

III. <u>First Claim: Evidence of Prior Rape</u>
     A. <u>Is the Claim Procedurally Barred?</u>
     B. <u>Other Crimes Evidence: State Law</u>
     C. <u>Other Crimes Evidence: Federal Law</u>
        1. <u>A Categorical Violation</u>
        2. <u>An In-This-Case Violation</u>
     D. <u>Conclusion</u>

IV.  <u>Second Claim: Sufficiency of the Evidence</u>
     A. <u>General Principles</u>
     B. <u>The State Court Decision</u>
     C. <u>The Elements</u>
        1. <u>First Element: Did Someone Sexually Assault Woman #2?</u>

2. <u>Second Element: Was the Petitioner's Purpose to Promote or Facilitate the Sexual Assault of Woman #2?</u>
3. <u>Did the Petitioner Aid or Attempt to Aid in the Sexual Assault of Woman #2?</u>
4. <u>Did the Petitioner Have the Same Criminal State of Mind as the Person Who Sexually Assaulted Woman #2?</u>
5. <u>Conclusion</u>

V. <u>Third Claim: Lack of Unanimity</u>

VI. <u>Fourth Claim: Ineffective Assistance of Counsel</u>
 A. <u>General Principles</u>
 B. <u>Procedural History</u>
 C. <u>Ineffective Assistance: Lack of Diligence</u>
 D. <u>Ineffective Assistance: Failure to Call Alibi Witness</u>
  1. <u>The Lawyer's Investigation</u>
  2. <u>The Lawyer's Decision</u>
   a. <u>The State Court's Determinations</u>
   b. <u>The Evidentiary Basis for the State Court's Determinations</u>
  3. <u>The State Court's Decision Was Not Unreasonable</u>
   a. <u>Performance</u>
   b. <u>Prejudice</u>
 E. <u>Ineffective Assistance: Failure to Advise the Petitioner of His Right to Testify</u>

VII. <u>Conclusion</u>

\*  \*  \*

After two men forced their way into an apartment, they held two women at gunpoint, bound them, and blindfolded them. One man sexually assaulted one of the women; another man sexually assaulted the other woman.

One of the men, the subject of this opinion, was arrested, charged, tried, and convicted. He was sentenced to 60 years in state prison.

He petitions now to be released, alleging his conviction violated federal law.

The petition is denied.

*      *      *

## I.  Background

### A. Trial Evidence

The trial evidence, as relevant for the moment, was as follows.[1]

A woman ("Woman #1") and her boyfriend ("Man #1") lived together in a New Jersey apartment.  See State v. Massenburg, 2014 WL 7506760, at *1 (N.J. Super. Ct. App. Div. Jan. 12, 2015).

Man #1 left the apartment.  See Trial Transcript 2T at 22:3-6;[2] Massenburg, 2014 WL 7506760, at *1.  A woman ("Woman #2") then came to the apartment for a visit.  See Trial Transcript 2T at 98:3-14; Massenburg, 2014 WL 7506760, at *1.

Within about an hour of Woman #2's arrival, four intruders, all men, entered the apartment.  See Trial Transcript 2T at 115:3-5. They remained in the apartment for about four hours, with Woman #1 and Woman #2.  See Trial Transcript 2T at 113:23 to 114:1, 215:13-17; Massenburg, 2014 WL 7506760, at *1.

Two of the men, each masked, grabbed Woman #1 soon after they entered the apartment and held her at gunpoint.  See Trial Transcript 2T at 102:1 to 103:10.  Woman #1 recognized one of the masked men's voices as the voice of Man #1's uncle.[3]  See id. at 108:15 to 109:22, 142:1-6, 175:13-15; Massenburg, 2014 WL 7506760, at *1.

The man whose voice Woman #1 recognized is referred to in this section as Intruder #1.

In the apartment, Intruder #1 and another intruder ("Intruder #2") together zip-tied the hands and feet of Woman #1 and Woman #2, and covered each of their eyes and mouths with duct tape.  See Trial Transcript 2T at 104:9 to 106:3, 155:7-13, 212:19 to 215:17;

---

[1] For reasons discussed in Part IV.A below, the evidence is presented in the light most favorable to the prosecution.

[2] The trial transcript is at docket entries 7-1 through 7-8.

[3] Man #1's uncle is Anthony Massenburg.  He is the Petitioner here.

Massenburg, 2014 WL 7506760, at *1.

Intruder #1 took Woman #1 to the bathroom.  See Trial Transcript 2T at 115:14 to 116:15; Massenburg, 2014 WL 7506760, at *1.  She was still bound.  See Trial Transcript 2T at 116:8-10; Massenburg, 2014 WL 7506760, at *1.  Intruder #1 forced her to perform oral sex on him.  See Trial Transcript 2T at 116:20 to 118:15; Massenburg, 2014 WL 7506760, at *1.

Intruder #1 used a condom during his sexual assault on Woman #1. See Trial Transcript 2T at 118:1-4.  Intruder #1 ejaculated, and smelled "like he had been smoking."  See id. at 192:12-17.

Afterwards, Intruder #2 took Woman #2 to the bathroom.  See id. at 221:10-25.  She, too, was still bound.  See id. at 223:24 to 224:5. Intruder #2 forced her to perform oral sex on him.  See id. at 222:13 to 224:18; Massenburg, 2014 WL 7506760, at *1.

The intruders seemingly became angry with Woman #1 at one point, and asked if she had "ever seen anyone drown before."  Trial Transcript 2T at 120:3; Massenburg, 2014 WL 7506760, at *1. Certain of the intruders began filling the bathtub and carried Woman #1 toward the bathroom.  See Trial Transcript 2T at 120:6-17; Massenburg, 2014 WL 7506760, at *1.

Eventually, Man #1 returned to the apartment.  See Trial Transcript 2T at 120:18-19; Massenburg, 2014 WL 7506760, at *1.

Man #1 recognized the voice of Intruder #1 as the voice of his uncle.[4]  See Trial Transcript 2T at 24:3 to 25:11, 47:11-12; Massenburg, 2014 WL 7506760, at *2.

A fight started.  See Trial Transcript 2T at 26:22 to 28:4; Massenburg, 2014 WL 7506760, at *2.  During the fight, Man #1 was hit with a hammer and with a gun.  See Trial Transcript 2T at 28:5-13; Massenburg, 2014 WL 7506760, at *2.  During the fight, Man #1 pulled Intruder #1's mask off and saw Intruder #1's face.  See Trial Transcript 2T at 29:16-24; Massenburg, 2014 WL 7506760, at *2.

As the fight continued, Man #1 escaped.  See Trial Transcript 2T at 30:8-16; Massenburg, 2014 WL 7506760, at *2.  Woman #1 and Woman #2 also escaped.  See Trial Transcript 2T at 127:8 to 128:19;

---

[4]  See footnote 3 above.

4

*Massenburg*, 2014 WL 7506760, at *2.[5]

After the events in the apartment, police tested a condom and cigarette butt found in the apartment.[6] Those contained the DNA of Anthony Massenburg. *See* Trial Transcript 2T at 141:4-20; Trial Transcript 4T at 82:3 to 83:4, 91:8 to 92:5.

## B. Procedural History

As noted just above, Intruder #1 was identified as Anthony Massenburg, by Man #1, Woman #1, and DNA evidence. He was arrested and criminally charged by New Jersey authorities.

Following a jury trial, Massenburg was convicted of fourteen New Jersey felonies. *See* Judgment of Conviction at 1-4;[7] *Massenburg*, 2014 WL 7506760, at *2. He was then sentenced to 60 years in prison. *See* Judgment of Conviction at 1-4; *Massenburg*, 2014 WL 7506760, at *2.

Massenburg appealed to the New Jersey Superior Court, Appellate Division. The Appellate Division affirmed the judgment of conviction, but vacated the sentence and remanded for resentencing. *See* *Massenburg* 2014 WL 7506760, at *7-*8.

On remand, the court imposed the same sentence, a prison term of 60 years. *Compare* Resentencing Hearing Transcript 12T at 16:14 to 39:18, *with* Resentencing Judgment of Conviction at 1-5.

After resentencing, Massenburg petitioned the Supreme Court of New Jersey for his case to be heard. The court denied the petition. *See* *State* v. *Massenburg*, 115 A.3d 833 (N.J. 2015).

---

[5] Why did the intruders enter the apartment? The prosecution's core theory: Intruder #1 sought vengeance against Man #1 and Woman #1 in connection with a family feud. *See* Trial Transcript 1T at 19:20 to 20:71; *see also* Part III.C.2.

[6] Recall Intruder #1 ejaculated into a condom and smelled like he had been smoking.

[7] The judgment of conviction is at docket entry 7-16. As to the other court documents referred to in this section, the resentencing hearing transcript is at docket entry 7-12, the resentencing judgment of conviction is at docket entry 7-27, the post-conviction relief petition is at docket entry 7-27, and the post-conviction relief opinion is at docket entry 7-28.

Massenburg then filed a petition for post-conviction relief.  See Post-Conviction Relief Petition at 1-5.  The New Jersey Superior Court, Criminal Division, denied the petition.  See Post-Conviction Relief Opinion at 1-24.

Massenburg appealed, and the Appellate Division affirmed.  See State v. Massenburg, 2019 WL 5853209, at *1 (N.J. Super. Ct. App. Div. Nov. 8, 2019).

Massenburg then petitioned the Supreme Court of New Jersey to hear his case.  The court denied the petition.  See State v. Massenburg, 226 A.3d 511 (N.J. 2020).

## C. The Petition

This case was initiated on July 22, 2020, with the filing of a petition for a federal writ of habeas corpus.[8]

On May 24, 2023, the case was reassigned to the undersigned.

The Petition alleges four federal law violations.[9]

First, the Petitioner[10] argues the trial court violated federal law by allowing the jury to consider evidence regarding his alleged rape of Woman #1, on an occasion before the events in the apartment that were described above in Part I.A.  See Petition at 7.

Second, the Petitioner argues he was convicted in violation of federal law because there was insufficient evidence on Count Thirteen.  See id. at 9.  On that Count, the Petitioner was charged as an accomplice to the sexual assault committed by Intruder #2

---

[8]  The Petition is brought under Title 28, United States Code, Section 2254.  It provides: "a district court shall entertain . . . a [petition on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

[9]  The Petition appears to have been prepared without assistance from a lawyer.  Therefore, it must be "read generously."  Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010).

[10]  As noted above, the Petitioner is Anthony Massenburg.

against Woman #2, as described above in Part I.A.[11]

<u>Third</u>, the Petitioner argues the jury's verdict on Count Thirteen violated federal law because it may not have been unanimous. <u>See id</u>. at 10.

<u>Fourth</u>, the Petitioner argues his trial lawyer was ineffective, in violation of federal law, because the lawyer did not: (1) work hard enough or communicate well enough, (2) call a certain witness, or (3) advise the Petitioner of his right to testify at trial. <u>See id</u>. at 11-12.

Because of these four alleged federal law violations, the Petitioner argues, his conviction should be vacated. <u>See id</u>. at 15.

### D. **The Court's Approach**

The Court begins its assessment of the Petitioner's arguments with a brief section, <u>see</u> Part II, that describes the legal principles that apply here across the board. The Court then considers the Petitioner's four alleged federal law violations, in Part III, Part IV, Part V, and Part VI, and explains why none of these supplies a basis for relief. A brief conclusion, <u>see</u> Part VII, indicates that a certificate of appealability will not issue, and says why.

## II.  **Exhaustion and Standard of Review**

In federal habeas corpus cases such as this one, how a claim is assessed depends, in part, on whether it was "fairly presented" to the state courts. <u>See</u> <u>Kernan</u> v. <u>Hinojosa</u>, 578 U.S. 412, 413 (2016); <u>Wilkerson</u> v. <u>Superintendent Fayette SCI</u>, 871 F. 3d 221, 227, 229 (3d Cir. 2017) (citing <u>McCandless</u> v. <u>Vaughn</u>, 172 F.3d 255, 261-62 (3d Cir. 1999)). A claim that was fairly presented before the state courts is said to have been "exhausted."

### A. Exhaustion: General Principles

To exhaust a claim, a petitioner must have "presented [its] factual and legal substance to the state courts in a manner that put the state courts on notice that a federal claim was being asserted." <u>Wilkerson</u>, 871 F.3d at 228 (citing <u>McCandless</u>, 172 F.3d at 261) (cleaned up); <u>Cosma</u> v. <u>Powell</u>, 2023 WL 5731737, at *1 (D.N.J. July

---

[11]  Recall the trial evidence showed that Massenburg himself sexually assaulted Woman #1.

20, 2023).

Generally, a petitioner may "fairly present" his federal claim to state courts either: (a) explicitly, by directly referencing federal law in his arguments; or (b) implicitly, by indirectly invoking federal law, for example by citing to federal cases that themselves invoke federal law. See Wilkerson, 871 F.3d at 229 (quoting McCandless, 172 F.3d at 261-62); Cosma, 2023 WL 5731737, at *2.

## B. The Claims Here Were Exhausted

As to his first claim, related to the Petitioner's prior alleged rape of Woman #1, the Petitioner raised this claim in his state court appeals. See Petition for Certification on Direct Appeal, at 1-2.[12] This claim was raised explicitly. The Petitioner cited the United States Constitution. See Petitioner's Appellate Division Brief on Direct Appeal, at 14 (alleging a violation of his right to a fair trial and citing the Sixth and Fourteenth Amendments of the United States Constitution); Petition for Certification on Direct Appeal, at 1-2 (relying on Appellate Division brief). That was sufficient. See Harmon v. Lamar, 640 F. App'x 175, 179 (3d Cir. 2016) (referring to citation to "book and verse of the federal constitution") (cleaned up); Briston v. Wholey, 307 F. App'x 616, 618 (3d Cir. 2009) (same); cf. Wilkerson, 871 F.3d at 227-29.

As to the Petitioner's second claim, related to the alleged insufficiency of the evidence against him on Count Thirteen: this claim was also adequately raised before the state courts. See Petitioner's Appellate Division Brief on Direct Appeal at 20-21, 25 (alleging a violation of his Due Process rights, and citing to both a relevant federal case and the Fifth and Fourteenth Amendments of the United States Constitution); Petition for Certification on Direct Appeal at 1-2 (relying on Appellate Division brief); see generally Harmon, 640 F. App'x at 179; Briston, 307 F. App'x at 618; Wilkerson, 871 F.3d at 229.

The Petitioner's third federal claim, focused on jury unanimity as to Count Thirteen, was also fairly presented to the state courts.

---

[12] The petition for certification on direct appeal is at docket entry 7-19. As to the remaining court documents referred to in this section, the Petitioner's Appellate Division brief on direct appeal is at docket entry 7-16, his Appellate Division brief on post-conviction relief appeal is at docket entry 7-26, and his post-conviction relief petition for certification is at docket entry 7-33.

See Petitioner's Appellate Division Brief on Direct Appeal at 26-
27 (raising jury unanimity claim, and citing to a relevant federal
case); Petition for Certification on Direct Appeal at 1-2 (relying
on Appellate Division brief); see generally Wilkerson, 871 F.3d at
229 (a petitioner may fairly present a claim through "reliance on
pertinent federal cases employing constitutional analysis");
Cosma, 2023 WL 5731737, at *2 (same).

The Petitioner's fourth and final claim is ineffective assistance
of counsel.   Again: this claim was adequately raised.    See
Petitioner's Appellate Division Brief on Post-Conviction Relief
Appeal at 20, 23-27 (alleging violations of the right to counsel
and citing numerous relevant federal cases), Post-Conviction
Relief Petition for Certification at 3-4 (relying on Appellate
Division briefs); see generally Wilkerson, 871 F.3d at 229; Cosma,
2023 WL 5731737, at *2.

In short: the Petitioner "fairly presented" in state court each of
the four federal law claims he now presses in his Petition.   These
claims are therefore fully exhausted.[13]

## C. Standard of Review for Exhausted Claims

Where, as here, all federal law claims have been exhausted before
the state courts:

> Federal courts may not grant a petition with respect to any
> claim . . . , unless the state court's decision:
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the Supreme
>> Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented[.]

28 U.S.C. § 2254(d)(1)-(2).

As to the first prong: "clearly established" law "includes only
the holdings, as opposed to the dicta, of [Supreme Court]

---

[13]   Each of the claims was denied by the relevant state courts.
See Massenburg, 226 A.3d 511; Massenburg, 115 A.3d 833; Massenburg,
2019 WL 5853209, at *2; Massenburg, 2014 WL 7506760, at *1.

decisions," as of the time of the relevant state court decision. <u>White</u> v. <u>Woodall</u>, 572 U.S. 415, 419 (2014) (cleaned up).

As to factual findings: "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.   <u>First Claim: Evidence of Prior Rape</u>

The Petitioner first argues the state trial court violated federal law by allowing the jury to hear evidence about his alleged prior rape of Woman #1.[14]  <u>See</u> Petition at 7.

Such "other crimes evidence," the Petitioner notes, is governed in New Jersey courts by New Jersey Rule of Evidence 404(b).[15]  <u>See</u> Reply at 10-11.  And the assertedly erroneous admission of the other crimes evidence, the Petitioner argues, violated his federal "right to a fair trial[.]"  Petition at 7.

The state court rejected this claim, <u>see</u> <u>Massenburg</u>, 2014 WL 7506760, at *3-*4, on grounds that might be understood as establishing a "procedural bar."[16]

---

[14]  As noted above, this alleged rape of Woman #1 occurred prior to the events in the apartment described in Part I.A.  <u>See</u> <u>Massenburg</u>, 2014 WL 7506760, at *1, *3.

[15]  Rule 404(b):

> (b) Other Crimes, Wrongs, or Acts.
>
>> (1) Prohibited Uses. . . . [E]vidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>>
>> (2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

[16]  This term is explained in the next section.

Against this backdrop, the Court first explains why it does not rest its analysis of the other crimes evidence claim on a possible procedural bar. See Part III.A. After that, in Part III.B and Part III.C, the Court explains why, on the merits, the claim fails.

## A. Is the Claim Procedurally Barred?

Before getting to the question in the heading, some background.

In a federal habeas corpus case such as this one, federal law claims can sometimes be deemed "procedurally barred." This classification can carry important practical consequences. Why? Because there are tight limits on a habeas court's ability to grant relief on a procedurally barred claim. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991); Greene v. Superintendent Smithfield SCI, 882 F.3d 443, 449 (3d Cir. 2018); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

How does a claim come to count as procedurally barred? There are two steps.

First, the state court in question must have considered the petitioner's federal law claim --- but determined, separate from the merits of the claim, that a state procedural law prevented the petitioner from prevailing. See Martinez v. Ryan, 566 U.S. 1, 9-10 (2012); Coleman, 501 U.S. at 750.[17]

And second, the federal habeas corpus court must conclude that certain standards were met. For example, the state procedural law invoked by the state court must be firmly established and regularly followed, see Walker v. Martin, 562 U.S. 307, 316 (2011), and it must be "independent" of the federal claim. Coleman, 501 U.S. at 729, 750.

With that background, come back now to this case.

Here, the state court[18] rejected the Petitioner's other crimes

---

[17]  A typical example: a state court might decide that a state law deadline as to when a federal claim must be raised was missed, and therefore the federal claim may not be considered. See, e.g., Marsalis v. Pennsylvania Dep't of Corr., 37 F.4th 885, 889 (3d Cir. 2022); Johnson v. Superintendent Coal Twp. SCI, 2022 WL 866312, at *1 (3d Cir. Feb. 4, 2022).

[18]  The focus here is on the state appellate court, because on habeas review the federal court looks to the last "reasoned" state

evidence claim based on the state law "invited error" doctrine.[19]
See Massenburg, 2014 WL 7506760, at *4.  And there is an argument
that this invocation of the invited error doctrine counts here as
a procedural bar to the Petitioner's claim.

To see the argument, think through the two steps sketched out
above.

As to the first step, the state court indicated the invited error
doctrine "bar[red]" relief on the other crimes evidence claim, see
id., separate from its merits.  In a similar vein, the state court
stated that because of the invited error doctrine the Petitioner
"cannot now be heard to complain" about the other crimes evidence.
See id.

This sounds like a determination from the state court that state
procedural law (the invited error doctrine) put a hard stop to
analysis of the other crimes evidence claim, before the analysis
could get off the ground.  That would seem to satisfy the first
step of the procedural bar test.

As to the second step, the invited error doctrine appears well-
established and regularly followed.  See Hamilton v. Nogan, 2016
WL 7435805, at *8 (D.N.J. Dec. 21, 2016)(so holding); cf. State v.
A.R., 65 A.3d 818, 829 (N.J. 2013)(describing the invited error
doctrine as a "settled principle of law"); New Jersey Div. of Youth
& Fam. Servs. v. M.C. III, 990 A.2d 1097, 1104 (N.J. 2010) ("Our
courts have applied the doctrine of invited error in a wide variety
of situations.").  Moreover, at least one federal court has held
that a New Jersey court's invocation of the invited error doctrine
can establish a procedural bar for federal habeas corpus purposes.
See Hamilton, 2016 WL 7435805, at *8-*9.

Given all this, the Court will assume that because the state court
disposed of the Petitioner's other crimes evidence claim based on

---

court decision as to a given claim.  See Ylst v. Nunnemaker, 501
U.S. 797, 803-04 (1991).

[19]   The crux of the doctrine: a party cannot complain about an
asserted "error" that it "invited."  See State v. A.R., 65 A.3d
818, 829-30 (N.J. 2013).  At trial, the Petitioner offered the
evidence of the prior alleged rape that he now complains about.
The state court held that if there was an "error" (allowing the
jury to consider the rape evidence) the Petitioner "invited" the
error (by himself offering the evidence).  See Massenburg, 2014 WL
7506760, at *4.

the state law invited error doctrine, the claim is procedurally barred for federal habeas corpus purposes.[20]

This said, the Court is permitted to put aside a procedural bar, and to decide an otherwise-barred claim on the merits.    This is allowed if the claim is, on the merits, not persuasive.  See 28 U.S.C. § 2254(b)(2); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005); Davies v. Powell, 2022 WL 1664535, at *4 (D.N.J. May 24, 2022).  That is the case here.  As will be discussed, in Part II.B and Part II.C below, the Petitioner's other crimes evidence claim is meritless.

Against this backdrop, the Court will put aside any procedural bar and decide the claim on the merits.

As to why, start by noting that an argument that a federal habeas claim is procedurally barred is an affirmative defense.  See Szuchon v. Lehman, 273 F.3d 299, 321 (3d Cir. 2001).  The state has to raise the argument.

But here, New Jersey has not argued that that the other crimes

---

[20]  There may be reason to doubt this assumption.  A state court decision grounded on state procedural law does not count as a procedural bar for federal habeas corpus purposes when "the state law ground is so interwoven with federal law that it cannot be said to be independent of a petitioner's federal claims."  Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004) (cleaned up); see also Michigan v. Long, 463 U.S. 1032, 1038 n.4 (1983); Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007).  That may be the case with the invited error doctrine.  The doctrine forbids claims of "error" by the party that "invited" them --- but only if the error was not very serious.  See A.R., 65 A.3d at 830 (collecting numerous cases); accord State v. Harper, 319 A.2d 771, 774-75 (N.J. Super. Ct. App. Div. 1974); see also Massenburg, 2014 WL 7506760, at *3-*4.  That means the invited error doctrine may necessarily involve some "intertw[ea]v[ing]," Michigan, 463 U.S. at 1038 n.4, with assessment of the merits of a claim.  Why? Because how a state court assesses the merits of a claim (does it involve a very serious error?) determines, in part, whether that court will apply the invited error doctrine.  Put differently, whether a state court applies the invited error doctrine to bar a claim arguably depends on the state court's analysis of the underlying claim itself.  But when a state court relies on a state procedural law, that usually counts as a procedural bar only if there is an "independent" relationship between application of the state procedural law and the merits of the claim.  See Coleman, 501 U.S. at 750.

evidence claim is procedurally barred.  See Answer at 22-35, 79-80.

Therefore, to treat the other crimes evidence claim as procedurally barred the Court would need to raise the procedural bar on its own.  This is allowed.  See Oelsner v. United States, 60 F. App'x 412, 414 n. 2 (3d Cir. 2003); Sweger v. Chesney, 294 F.3d 506, 520-21 (3d Cir. 2002); cf. Jeffrey M. Anderson, The Principle of Party Presentation, 70 Buff. L. Rev. 1029, 1092 (2022).

But if a court raises a procedural bar on its own, it must then give the habeas petitioner a chance to respond.  See Robinson v. Oliver, 2023 WL 3454579, at *6 (E.D. Pa. May 15, 2023); Shakir v. Capozza, 2022 WL 17090057, at *2 (W.D. Pa. Nov. 21, 2022); Buckwalter v. Lancaster Prob. & Parole, 2016 WL 8259492, at *8 (M.D. Pa. Dec. 7, 2016); cf. Day v. McDonmough, 547 U.S. 198, 210 (2006) ("[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

That is not, now, the road to go down.  The Petition in this case was filed more than three years ago.  See Part I.B. above (recounting case's history).  The need for another round of back-and-forth briefing would extend the time horizon here by at least a number of months.  And resolving habeas matters at an appropriately "swift" pace, Braden v. 30th Jud. Cir. Ct. of Kentucky, 410 U.S. 484, 490 (1973), is broadly important, including for both the Petitioner and the crime's victims.

Moreover, there is no practical upside to slowing things down to determine whether the other crimes evidence claim is procedurally barred.  The claim, as noted, fails anyway.

Given all this, the Court will assume the Petitioner's other crimes evidence claim is procedurally barred --- but will put that aside and address the claim on its merits.  That requires a de novo analysis,[21] which the Court undertakes in in the next two sections.

---

[21]  See Johnson v. Williams, 568 U.S. 289, 301-02 (2013); Dallas v. Warden, 964 F.3d 1285, 1298 (11th Cir. 2020); Robinson v. Beard, 762 F.3d 316, 329 n.4 (3d Cir. 2014); Hall v. Thaler, 504 F. App'x 269, 274 (5th Cir. 2012); Brown v. McKee, 231 F. App'x 469, 472 (6th Cir. 2007).  De novo analysis is new and fresh analysis, done from scratch.  See generally Zervos v. Verizon, 252 F.3d 163, 168 (2d Cir. 2001).

**B. Other Crimes Evidence: State Law**

On the merits, the main thrust of the Petitioner's other crimes evidence claim is that letting the jury consider the alleged prior rape violated New Jersey's evidence rules. See Reply at 10 (citing New Jersey Rules of Evidence 403 and 404(b)).

But federal habeas relief is not generally available for alleged errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991); Brown v. Superintendent Mahanoy SCI, 2021 WL 5849273, at *2 (3d Cir. Nov. 23, 2021); Suny v. Pennsylvania, 687 F. App'x 170, 174 n.23 (3d Cir. 2017); Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).[22]

**C. Other Crimes Evidence: Federal Law**

Putting aside the claim's state law aspect, see Part III.B above, what is left is the Petitioner's argument that federal law was violated by the trial court allowing the jury to consider the evidence of the alleged rape. See Petition at 7; Reply at 8-9.

As to federal law, it is not perfectly clear what the Petitioner is arguing. But the Petitioner is not represented here by a lawyer, and the Court therefore must consider his Petition liberally. See footnote 9 above.

Here, that means taking the Petition as raising one of two possible federal law claims. Consider these below, each in turn.

**1. A Categorical Violation**

One way to understand the Petition: the admission of other crimes evidence always violates a criminal defendant's federal right to a fair trial. See Petition at 7; Petitioner's Appellate Division Brief on Direct Appeal at 14.

---

[22]    The Petitioner also argues that the trial court should have given a limiting instruction on the prior alleged rape. But the Petitioner's argument on this point relies solely on the New Jersey Rules of Evidence and state law cases interpreting state law. See Reply at 10; cf. Petitioner's Appellate Division Brief on Direct Appeal at 14 16-19. It cannot be a basis for relief here, as noted in the text. (And note also: the Petitioner never sought a limiting instruction as to how the jury might consider the alleged rape evidence. See Massenburg, 2014 WL 7506760, at *3 ("These arguments were not raised before the trial court.").

But this categorical, across-the-board argument is not persuasive. The Petitioner has the burden. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011). But he does not cite, and the Court has not found, any case that holds admission of other crimes evidence always violates federal law. Indeed, the cases all seem to lean the other way.[23]

### 2. An In-This-Case Violation

Another way to understand the Petitioner's argument: it is on the facts of this particular case that admission of other crimes evidence amounted to a violation of the Petitioner's federal right to a fair trial. See Reply at 8-9, 13.

To assess this argument, start by noting that habeas claims are often bottomed on the argument that: the prosecution offered other

---

[23] From the Third Circuit, see: Allison v. Superintendent Waymart SCI, 703 F. App'x 91, 97 (3d Cir. 2017) (the claimant could not "identify clearly established Supreme Court precedent that [admission of other crimes] evidence constitutes a violation of due process"); Minett v. Hendricks, 135 F. App'x 547, 552 (3d Cir. 2005) ("[The claimant] cites no Supreme Court case clearly establishing the admission of 'other crimes' evidence constitutes a violation of federal fair trial rights. To the contrary, the most relevant Supreme Court cases suggest the contrary."). From this Court, see: Ragland v. Att'y Gen. of New Jersey, 2023 WL 4541916, at *5-*6 (D.N.J. July 14, 2023) ("The Supreme Court has never held that evidence of prior bad acts --- even when they amount to other crimes --- must be excluded from criminal trials[.]"). From other courts, see: Rushing v. Atchley, 2023 WL 2400834, at *1 (9th Cir. Mar. 8, 2023) ("[T]here is no clearly established [United States Supreme Court] law that addresses whether the admission of a defendant's . . . prior bad acts would violate due process." (cleaned up); Chambers v. Artis, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence[.]"); Riojas v. Gurman, No. 20-202, 2023 WL 1993670, at *6-*7 (M.D. Pa. Feb. 14, 2023) (same) (noting that the Federal Rules of Evidence allow some forms of prior bad acts evidence and that "no circuit court has found that the allowance of such evidence violates due process"). The rules of evidence in federal court and in many state courts have long allowed the admission of other crimes evidence in certain circumstances. If the Petitioner's categorical argument were right, all of these rules of evidence would seem to be unconstitutional.

crime evidence against the defendant; the trial court did not sustain a meritorious defense objection to the evidence; and the defendant's fair trial rights were therefore violated. See, e.g., Lawrence v. Att'y Gen. for New Jersey, 2019 WL 1930269, at *3, *10-*13 (D.N.J. Apr. 30, 2019); Gentile v. Warren, 2013 WL 85266, at *9-*11 (D.N.J. Jan. 7, 2013); Burgos v. Ricci, 2012 WL 933205, at *4-*7 (D.N.J. Mar. 19, 2012).

But that is not what happened in this case. Here, it was the Petitioner, through his lawyer, who offered the only evidence at trial as to his prior alleged rape of Woman #1. See Massenburg, 2014 WL 7506760, at *4 ("[t]he State did not mention the rape at any point in the trial").

The Petitioner's argument is not that the prosecutor and the judge made his trial unfair, by offering the other crimes evidence (in the case of the prosecutor) and by not sustaining a defense objection to it (in the case of the judge).

Rather, the Petitioner's argument is that the trial was unfair because after he elicited (through his lawyer) the evidence of the prior rape, the trial judge then did not step in, to prevent the jury from considering the evidence.

This argument is not persuasive, for two reasons.

First, the Petitioner, who bears the burden, see Cullen, 563 U.S. at 181, has not cited any cases that hold federal law is violated in a situation like this one --- in which the claim is that the state trial judge should have, on his own, essentially undone the choice the defendant made to put certain evidence before the jury. The Court has undertaken its own search, and has not found any such cases.[24]

_____

[24]  This is not surprising. A judge declining to jump in on his own is not typically thought of as a violation of our law; it is, rather, a basic feature of it. See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, . . . we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); McNeil v. Wisconsin, 501 U.S. 171, 181 n.2 (1991) ("What makes a system adversarial . . . is . . . the presence of a judge who . . . decides on the basis of . . . arguments pro and con adduced by the parties."); cf., e.g., Lon L. Fuller, The Forms and Limits of Adjudication, 92 Harv. L. Rev.

As to the second reason the Petitioner's argument is not persuasive, start with the basic rule: state evidentiary rulings can generally violate federal law, and therefore form a possible basis for habeas relief, only where a petitioner can show the evidentiary ruling was not just unfair, but "extremely" so, to the point of a violation of "fundamental fairness." Dowling v. United States, 493 U.S. 342, 352 (1990) (cleaned up); Brown, 2021 WL 5849273, at *2; Allison, 703 F. App'x at 98; Glenn v. Wynder, 743 F.3d 402, 407 (3d Cir. 2014).[25]

Now take it as a given that this basic rule applies not only in the ordinary situation (where a petitioner complains the prosecutor offered certain evidence against him), but also in the situation here (where the petitioner was the one who offered the evidence).

If, indeed, the basic rule applies here, would the Petitioner be able to meet the above-quoted standards?

To answer this question, zero in on the trial evidence.

The Petitioner's lawyer elicited the prior rape testimony during his cross-examination of Man #1. See Massenburg, 2014 WL 7506760, at *3-*4. At the beginning of the cross-examination, the Petitioner's lawyer worked to emphasize that the relationship between the Petitioner and Man #1 was very bad. See Trial Transcript 2T at 54:17 to 55:18 ("Now you said that your relationship with [the Petitioner] was up and down?"). To that end, the Petitioner's lawyer elicited testimony regarding the Petitioner's prior threats of violence against Man #1, as well as physical altercations between the two men. See id.

The Petitioner's lawyer then continued questioning Man #1 about

---

353, 388 (1978).

[25]    The evidentiary ruling in question must have been "so prejudicial that it violates . . . 'fundamental conceptions of fairness.'" Allison, 703 F. App'x at 98 (quoting Dowling, 493 U.S. at 352). To meet this standard, a petitioner must typically show the "evidence's probative value [was] so conspicuously outweighed by its inflammatory content, so as to violate a [petitioner's] constitutional right to a fair trial." Bronshtein, 404 F.3d at 730 (cleaned up); see also Brown, 2021 WL 5849273, at *2; Murphy v. Att'y Gen. of New Jersey, 2022 WL 17177083, at *6 (D.N.J. Nov. 23, 2022); Smith v. Johnson, 2019 WL 2724370, at *9 (D.N.J. July 1, 2019).

his relationship to the Petitioner:

> Q. Okay. And at that time [December 31, 2010, three weeks before the apartment attack] you guys were still sugar and cake?
>
> A. Not at that time.
>
> Q. It wasn't at that time?
>
> A. No, we [were] on very bad terms at that time.
>
> Q. Oh, what happened then?
>
> A. During . . . December while he was staying here I actually walked in and caught him raping my girlfriend.
>
> Q. Raping your girlfriend?
>
> A. Raping my girlfriend. And that put us on very bad terms. When I say very bad terms, that put us on very bad terms.
>
> Q. That's what your girlfriend said it was rape?
>
> A. Yes.
>
> Q. So, if she gave a statement saying that they were partying and you left, and she got drunk and con[sensually] had some sex with Mr.--
>
> A. No.
>
> Q. -- that -- I haven't finished with my question -- you would -- you would dispute what she has said in her statement that it was consen[s]ual. You['re] saying it wasn't consen[s]ual.
>
> . . . .
>
> Q. Is that what your testimony is?
>
> A. What -- I'm saying is I'm answering you[r] . . . question in December me and Mr. Massenb[urg] was on very bad terms. I walked in and I caught him actually raping my girlfriend.
>
> Q. Okay. That's what she said that he was raping her.

19

A. No, that's what I saw.  That's what I saw with my own two eyes.

. . . .

A. That's — that's what put us on very bad terms.

Id. at 57:4 to 58:22.

On his appeal in state court, the Petitioner argued it was "difficult to conceive of any scenario where the defendant would benefit from introducing evidence that he committed a previous rape upon the same victim for whom he is presently on trial for the same charge."  Petitioner's Appellate Division Brief on Direct Appeal at 15.

But that is not right.  Man #1 and Woman #1 identified the Petitioner as one of the masked intruders who barged into their apartment.  See Trial Transcript 2T at 24:3 to 25:11, 47:11-12; 108:15 to 109:22, 142:1-6, 175:13-15.

This identification testimony was both very important and very inculpatory.  It could not simply be ignored or wished away.  If left alone, the case would essentially be over.  From the perspective, then, of the Petitioner's lawyer, the question was not whether to take on the identification testimony, but how.

Attacking the testimony as a mistake would be difficult.  After all, Man #1 and Woman #1 knew the Petitioner's voice, and presumably well --- he is Man #1's uncle.  See id. at 24:3 to 25:11, 47:11-12, 108:15 to 109:22, 142:1-6, 175:13-15.  Moreover, the events in the apartment went on for a meaningful period of time.  That, too, made a simple identification mistake less unlikely.[26]

---

[26]  Common sense teaches that it would be hard to dismiss the identifications here as just a mistake.  This intuition finds support in the relevant academic literature.  And that literature would have made it harder for the Petitioner to persuasively argue, perhaps through an expert, that the identifications here were simple errors.  As to the literature, three points.  First, eyewitness identifications are generally less reliable when they involve identifying a stranger, or when they are based on short interactions.  See Thomas D. Albright & Brandon L. Garrett, The Law and Science of Eyewitness Evidence, 102 B.U. L. Rev. 511, 517 (2022) ("Scientific research has documented how . . . eyewitnesses can have great difficulty identifying strangers."); Third Circuit

In addition, two people (Man #1 and Woman #1) identified the Petitioner. And Man #1 not only testified that he heard the Petitioner's voice --- he also said he saw the Petitioner's face, when the Petitioner's mask came off during his fight with Man #1. See id. at 29:16-24.

Given all this, the defense strategy at trial was apparently not to argue that Man #1's/Woman #1's identifications of the Petitioner were mistakes.

Rather, the strategy was to claim their testimony was made up. But what motive (it would have to be a strong one) would Man #1 and Woman #1 have to fabricate their testimony?

As the appellate court explained: the "alleged rape of [Woman #1, Man #1's girlfriend] was repeatedly elicited by the defense to explain the motive for [Man #1] fabricating his testimony" against the Petitioner. Massenburg, 2014 WL 7506760, at *4; see Trial Transcript 2T at 57:4 to 58:22. Indeed, in summation, the

---

Task Force, 2019 Report of the United States Court of Appeals for the Third Circuit Task Force on Eyewitness Identifications, 92 Temp. L. Rev. 1, 20 (2019) ("[T]he length of time that a witness has to view an event . . . can impact the accuracy of the memory."); see also Katherine I. Higginbotham, Narrowing the Legrand Test in New York State, 83 Brook. L. Rev. 1059, 1074 (2018). Second, the Petitioner and Man #1 are related, and family eyewitness identifications are generally more accurate than stranger eyewitness identifications. See, e.g., Jonathan P. Vallano et. al., Familiar Eyewitness Identifications: The Current State of Affairs, 25 Psychol. Pub. Pol'y & L. 128, 131 (2019) (so noting). Third, recall that Woman #1 recognized the Petitioner based solely on the sound of his voice. The key points set out above --- that eyewitness testimony is more reliable as to non-strangers and family members, and following longer-duration events --- also apply to "earwitness" testimony, of the kind Woman #1 offered at trial. See, e.g., Jason A. Cantone, "Do You Hear What I Hear?": Empirical Research on Earwitness Testimony, 17 Tex. Wesleyan L. Rev. 123, 125, 129 (2011) ("Results showed that both high familiar and moderate familiar voices were more readily identified than unfamiliar voices. . . . Research has supported common sense notions that longer exposure to the criminal's voice leads to greater accuracy in identifications."); Lawrence M. Solan & Peter M. Tiersma, Hearing Voices: Speaker Identification in Court, 54 Hastings L.J. 373, 397 (2003) ("[P]eople are generally good at recognizing familiar voices. Yet they show remarkably high rates of error in identifying unfamiliar voices.").

Petitioner's lawyer argued just that. <u>See</u> Trial Transcript 6T at 21:17 to 22:19.

This strategy did not ultimately work. The Petitioner was convicted on numerous counts.

But that was not a foregone conclusion when the Petitioner's lawyer asked Man #1 about the Petitioner's alleged rape of Woman #1. At that point, eliciting that Man #1 saw the Petitioner rape Woman #1 was critical. If believed by the jury, it provided at least something of a motive for Man #1 and Woman #1 to give false testimony. And suggesting such a motive was a way to try to dislodge perhaps the most important piece of evidence in the case, the identification of the Petitioner by Man #1 and Woman #1.

Given the defense trial strategy, the probative value of the prior rape evidence was high. <u>See generally Bronshtein</u>, 404 F.3d at 730 (to establish that a violation of a state evidentiary rule denied him his federal right to a fair trial, a habeas petitioner must show the "evidence's probative value [was] so conspicuously outweighed by its inflammatory content, so as to violate a [petitioner's] constitutional right to a fair trial") (cleaned up).

On the other side of the ledger, evidence of the prior alleged rape was of course "inflammatory." <u>Id.</u> But "[]weigh[ing] . . . its inflammatory content," <u>id.</u>, required putting that evidence in the context of the trial as a whole. <u>See Amrine</u> v. <u>Bowersox</u>, 238 F.3d 1023, 1032-33 (8th Cir. 2001); <u>Laird</u> v. <u>Wetzel</u>, 2016 WL 4417258, at *43 (E.D. Pa. Aug. 19, 2016); <u>cf.</u> <u>United States</u> v. <u>Williams</u>, 974 F.3d 320, 357 (3d Cir. 2020). And the trial already involved proof of multiple sexual assaults the Petitioner participated in. <u>See</u> Trial Transcript 2T at 115:14 to 118:14, 221:5 to 224:24.

In sum: on the trial defense pursued by the Petitioner, the probative value of the prior rape evidence was high, and that value was not "conspicuously outweighed by its inflammatory content," <u>Bronshtein</u>, 404 F.3d at 730. This means that even if the state court erred in allowing the jury to consider the other crimes evidence offered by the Petitioner, that error did not deprive the Petitioner of his federal right to a fair trial.

### D. **Conclusion**

Although it might arguably be procedurally barred, the Court has considered the Petitioner's other crimes evidence claim on the merits. <u>See</u> Part III.A.

On the merits, the claim is not persuasive.

First, it is based on asserted errors of state law, but those, standing alone, do not provide a basis for federal habeas relief. See Part III.B.

Second, there is no support in the caselaw for the argument that admission of other crimes evidence always violates federal law. See Part III.C.1.

And third, there is no merit to the argument that, in this case, federal law was violated when the Petitioner, apparently for strategic reasons, elicited that Man #1 had seen him (the Petitioner) raping Woman #1. See Part III.C.2.

## IV.    Second Claim: Sufficiency of the Evidence

The Petitioner's next claim concerns his conviction on Count Thirteen.

Count Thirteen charged the Petitioner with aggravated sexual assault against Woman #2, under N.J. Stat. § 2C14-2a(4). See Indictment at 14.[27] The prosecution's theory on this Count was the Petitioner acted as an accomplice in the sexual assault of Woman #2 by Intruder #2. See Trial Transcript 6T at 60:25 to 62:2; see generally Part I.A.

The Petitioner's argument: his Count Thirteen conviction violated federal law (in particular, the Constitution's Due Process clause) because there was not enough evidence.

### A. General Principles

To make out a post-trial sufficiency-of-the-evidence claim, a claimant must show that "in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Rayner v. Superintendent Forest SCI, 2023 WL 1433610, at *1 (3d Cir. Feb. 1, 2023); Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983).

### B. The State Court Decision

In this case, the relevant state court undertook the above-referenced Jackson v. Virginia analysis. See Massenburg, 2014 WL

---

[27]  The Indictment is at docket entry 7-16.

7506760, at *5-*6.[28]  It reviewed the trial evidence as to Count Thirteen "in the light most favorable to the State," and gave "the State the benefit of all the reasonable and favorable inferences drawn therefrom."  See id. at *6.  And it concluded that there was sufficient evidence to sustain the Count Thirteen conviction.

Given the standard of review fixed by the federal habeas corpus statute, see Part II.C above, the core question here is: was "the state court's adjudication denying the . . . [Jackson v. Virginia] claim . . . objectively unreasonable."  Travillion v. Superintendent Rockview SCI, 982 F.3d 896, 902 (3d Cir. 2020); see also 28 U.S.C. § 2254(d)(1).[29]

To answer this question, consider the trial evidence as to each of the elements of the crime.

### C. The Elements

To be liable as an accomplice to aggravated sexual assault, "the essential elements of the crime," Jackson, 443 U.S. at 319, are:

  1. That a person committed . . . aggravated sexual assault;

  2. That the defendant's purpose was to promote or facilitate the commission of the offense;

  3. That the defendant . . . did aid or agree or attempt to aid him in . . . committing it; and

  4. That the defendant possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act.

Massenburg, 2014 WL 7506760, at *6 (quoting New Jersey Model Jury Charges (Criminal), "Liability for Another's Conduct" (N.J.S.A. §

---

[28]  As noted earlier, on habeas review a district court looks to the last "reasoned" state court decision as to a given claim.  See Ylst, 501 U.S. at 803-04.  On the Petitioner's sufficiency-of-the-evidence claim, that is the appellate court's decision on direct appeal.  See Massenburg, 2014 WL 7506760, at *5-*6.

[29]  The Jackson v. Virginia standard is "clearly established" within the meaning of the federal habeas statute.  See Travillion, 982 F.3d at 902; see generally 28 U.S.C. § 2254(d)(1).

2C:2-6) (1995)) (cleaned up); see also N.J. Stat. § 2C:2-6.[30]

Take now the trial evidence as to each element "in the light most favorable to the prosecution[.]" Sullivan, at 1083-84 (quoting Jackson, 443 U.S. at 319).

### 1. First Element: Did Someone Sexually Assault Woman #2?

The answer from the trial evidence: yes.

Woman #2 testified she was sexually assaulted in the apartment. See Trial Transcript 2T at 222:13 to 223:7. In particular, Woman #2 testified that an armed man (referred to in Part I.A as Intruder #2) took Woman #2 into the bathroom and forced Woman #2 to perform oral sex on him.[31] See id. at 221:5 to 224:24.

---

[30] The statute, N.J. Stat. § 2C:2-6:

a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
b. A person is legally accountable for the conduct of another person when:

. . . .

(3) He is an accomplice of such other person in the commission of an offense[.]
c. A person is an accomplice of another person in the commission of an offense if:
(1) With the purpose of promoting or facilitating the commission of the offense; he
(a) Solicits such other person to commit it;
(b) Aids or agrees or attempts to aid such other person in planning or committing it[.]

[31] Under N.J. Stat. § 2C:14-2(a)(4):

a. An actor is guilty of aggravated sexual assault if the actor commits an act of sexual penetration with another person under any one of the following circumstances:

. . . .

(4) The actor is armed with a weapon . . . and threatens by word or gesture to use the weapon . . . [.]

The jury was of course entitled to accept this testimony. And it was corroborated. For example, Woman #1 testified that she heard the Petitioner "t[e]l[l] [another] guy to go tie [Woman #2] up," and heard the "guy" take Woman #2 to the back of the apartment, where the men then together tied the women up. See id. at 104:9 to 106:3, 155:7-13, 212:19 to 215:17.[32]

### 2. Second Element: Was the Petitioner's Purpose to Promote or Facilitate the Sexual Assault of Woman #2?

Again: yes.

Woman #1 testified the Petitioner and Intruder #2 took her and Woman #2 into a back room, and worked together to zip-tie their hands and feet, and wrap duct tape around their mouths and eyes. See id. at 104:9 to 106:3, 155:7-13. (This was corroborated by Woman #2's testimony that two intruders worked together to restrain her and Woman #1. See id. at 212:19 to 215:17.)

Woman #1 further testified that when she asked to use the bathroom, the Petitioner took her there and forced her to perform oral sex on him. See id. at 115:14 to 118:14.

And after that, Woman #2 testified that Intruder #2 took Woman #2 into the bathroom and forced Woman #2 to perform oral sex on him. See id. at 221:5 to 224:24. While this was happening, there was evidence from which the jury could infer that the Petitioner was

---

[32] Note the appellate court rejected the Petitioner's argument that he was entitled to an acquittal because Woman #2 could not identify her assailant, the other intruder. See Massenburg, 2014 WL 7506760, at *6. As the court explained, the other intruder's identity was "not an essential element" of the accomplice charge against the Petitioner. Id.; see generally N.J. Stat. § 2C:2-6. This was plainly correct as a matter of state law. See N.J. Stat. § 2C:2-6(f); State v. Zarate, 2012 WL 3640613, at *12 (N.J. Super. Ct. App. Div. Aug. 27, 2012); State v. Gaskins, 2012 WL 3022048, at *6 (N.J. Super. Ct. App. Div. July 25, 2012). Here, the Petitioner renews his claim that the "the identity of the perpetrator was an essential element of the charge," Petitioner's Appellate Division Brief on Direct Appeal at 20, and that the evidence was insufficient because the identity of Intruder #2 was not established. But the sufficiency of the evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16. And, as noted, New Jersey law did not require that Intruder #2's identity be established.

keeping watch over Woman # 1. See id. at 114:5 to 115:8, 221:5-14.

By helping to bind Woman #2, the Petitioner helped to "promot[e] or facilitate[e]," N.J. Stat. § 2C:2-6(c)(1), Intruder #2's sexual assault of Woman #2. Watching over Woman #1 during the sexual assault of Woman #2 also "promot[ed] or facilitate[d]," id., the assault of Woman #2, because it helped ensure Woman #1 could not try to come to Woman #2's aid or call for help.

In short: the Petitioner directly "promot[ed] or facilitate[d]," id., the sexual assault of Woman #2.

Was that his purpose? See generally N.J. Stat. § 2C:2-6(c)(1) (second element: acting "[w]ith the purpose of promoting or facilitating the commission of the offense").

A "rational" juror, Jackson, 443 U.S. at 324, could conclude it was. The conclusion is common sense --- actions can be an accurate clue to the underlying purposes of the actor. The Petitioner directly promoted and facilitated the sexual assault of Woman #2 --- and a rational juror could infer this was no accident, that the Petitioner was acting purposefully.[33]

Moreover, this inference is especially strong here. The Petitioner sexually assaulted Woman #1 in the bathroom by forcing her to perform oral sex --- and Intruder #2 did the same thing to Woman #2 in the bathroom shortly afterwards. See Trial Transcript 2T at 115:14 to 118:14, 221:10 to 223:7. From this, a rational juror could conclude the Petitioner (who sexually assaulted Woman #1) and Intruder #2 (who sexually assaulted Woman #2) were working together on a shared common purpose --- sexually assaulting the women.[34]

---

[33] Cf. State v. Wolusky, 2021 WL 4197719, at *4 (N.H. Sept. 15, 2021) (finding that when a defendant restricts a victim's movement while aware that others are committing an additional crime against the same victim, a reasonable jury could infer that the defendant was promoting or facilitating the additional crime); State v. Drummond, 31 N.E.3d 1216, 1226-27 (Ohio Ct. App. 2015) (similar); Mills v. State, 144 So. 3d 499, 506 (Ala. Crim. App. 2013) (similar); State v. Flores, 2011 WL 3107897, at *2 (Ariz. Ct. App. July 26, 2011) (similar); State v. Jones, 1997 WL 111315, at *3 (Wash. Ct. App. March 13, 1997).

[34] Cf. People v. Strauss, 64 N.Y.S.3d 771, 775-76 (N.Y. App. Div. 2017) (evidence that a defendant and an accomplice committed a

### 3. **Did the Petitioner Aid or Attempt to Aid in the Sexual Assault of Woman #2?**

Yes.  Among other things, the Petitioner helped Intruder #2 bind Woman #2 before Intruder #2 sexually assaulted her.  See Trial Transcript 2T at 104:9 to 106:3, 155:7-13, 212:19 to 215:17.  This plainly "aid[ed]" Intruder #2's sexual assault of Woman #2.

### 4. **Did the Petitioner Have the Same Criminal State of Mind as the Person Who Sexually Assaulted Woman #2?**

As to this element, the prosecution had to prove the Petitioner acted with the same mental state as the person (Intruder #2) who sexually assaulted Woman #2.  Since the relevant sexual assault statute, see N.J. Stat § 2c:14-2(a)(4), does not have its own mental state requirement, the prosecution was required to prove the Petitioner acted "knowingly."  See N.J. Stat. § 2C:2-2(c)(3) (criminal statutes that do not set out a specific requirement should be construed as requiring knowing conduct).

"A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J. Stat. § 2C:2-2(b)(2).  "A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result." Id.

Here, a "rational" juror, Jackson, 443 U.S. at 324, could have found this standard was met, largely for the reasons set out in the preceding sections.  For example, a rational juror could have found that because the Petitioner helped restrain Woman #2, and then kept watch on Woman #1 during the sexual assault of Woman #2, he knowingly aided Intruder #2's sexual assault of Woman #2.  See Trial Transcript 2T at 104:9 to 106:3, 212:19 to 215:17, 221:5 to 224:24.

---

crime in close temporal and geographic proximity to a second similar crime, was relevant to demonstrating that the defendant engaged in a common scheme with his accomplice); People v. Lomeli, 2015 IL App (3d) 130687-U, ¶¶ 52-55 (Ill. App. Ct. 2015) (same); State v. Alvarez, 608 S.E.2d 371, 377-78 (N.C. Ct. App. 2005) (same); see also Green v. State, 61 So.3d 386, 395-97 (Ala. Crim. App. 2010) ("[E]vidence indicating that the crimes were committed in a similar manner, in a common locale, and within a short time frame," was sufficient to establish that the two crimes "were part of a common scheme or plan.").

D. **Conclusion**

The Petitioner argues that his conviction as to Count Thirteen violated federal law because there was too little evidence. But the state court, see footnote 28, conducted the required analysis under the governing Jackson v. Virginia, 443 U.S. 307 (1979) standard. And as the above element-by-element analysis makes clear, there was nothing "unreasonable," 28 U.S.C. § 2254(d)(1), about the conclusion the state court came to --- namely, that there was enough evidence.

V.    **Third Claim: Lack of Unanimity**

The Petitioner's next claim: the jury's verdict as to Count Thirteen violated federal law because some of the jurors may have voted to convict him on a principal theory (that he sexually assaulted Woman #2), while others may have voted to convict him on an accomplice theory (that Intruder #2 sexually assaulted Woman #2 and the Petitioner was Intruder #2's accomplice). See Petition at 10; see also Petitioner's Appellate Division Brief on Direct Appeal at 26, 29-30; Reply at 19-20.

The Petitioner argues this possible divergence between jurors violated his right to be convicted, if at all, only by means of a unanimous jury verdict. See Reply at 19-20.

This argument, though, is not persuasive.

The New Jersey appellate court denied the Petitioner's jury unanimity claim on January 12, 2015. See Massenburg, 2014 WL 7506760, at *6. Around five months later, the Supreme Court of New Jersey denied the Petitioner's request for his case, including the unanimity claim, to be heard. See Massenburg, 115 A.3d 833.

Federal habeas relief can only be granted based on a violation of a federal law that was "clearly established" by a United States Supreme Court holding as of the moment of the relevant state court decision. See generally 28 U.S.C. § 2254(d)(1) (establishing "clearly established" rule); Greene v. Fisher, 565 U.S. 34, 38 (2011) ("[Section] 2254(d)(1) requires federal courts . . . to measure state-court decisions against this Court's precedents as of the time the state court renders its decision.") (cleaned up).

The relevant state court decision is the January 12, 2015, appellate court decision (that substantively addressed the merits of the jury unanimity claim), not the New Jersey Supreme Court's later decision (that denied the Petitioner's request for the case to be considered). See Greene v. Palakovich, 606 F.3d 85, 91, 97-

99 (3d Cir. 2010) (explaining that "'clearly established' contemplates that the law or precedent existed at the time of the state court's substantive resolution of the petitioner's claim," and thus, the relevant cutoff date was the date of the Pennsylvania Superior Court's substantive denial of the claim, rather than the Pennsylvania Supreme Court's decision denying the request to consider the claim (emphasis removed)); aff'd sub nom. Fisher, 565 U.S. at 40 (finding that the relevant decision is the "adjudication on the merits," rather than "a decision by the state supreme court not to hear the appeal --- that is, not to decide at all"); see also Abdullah v. Warden SCI Dallas, 498 F. App'x 122, 129 n.10 (3d Cir. 2012).

But as of January 12, 2015, there was no "clearly established" federal right to a unanimous jury determination in state trials. See Edwards v. Vannoy, 141 S. Ct. 1547, 1551 (2021) (discussing the history of the relevant Supreme Court jurisprudence on juror unanimity); see also Hankerson v. Royce, 2023 WL 3867270, at *9 (E.D.N.Y. June 7, 2023) (denying a jury unanimity claim because the "right to a unanimous jury verdict [in state criminal trials] was not 'clearly established' . . . until" after the substantive denial in 2018 of the habeas petitioner's claim); Gibison v. Kerestas, 2016 WL 7638477, at *13 (E.D. Pa. June 10, 2016) (from a 2016 opinion: "[a] federal habeas claim invoking a right to jury unanimity [was] not cognizable on federal habeas review because there [was] no such clearly established federal right as determined by the Supreme Court."); accord, e.g., Clay v. Schiebner, 2023 WL 2789596, at *3 (E.D. Mich. Apr. 5, 2023); see generally Apodaca v. Oregon, 406 U.S. 404, 406 (1972) (allowing non-unanimous juries in state trials); Johnson v. Louisiana, 406 U.S. 356, 358-59 (1972) (explaining that the Supreme Court had "never held jury unanimity to be a requisite of due process of law" in state criminal cases); United States v. Edmonds, 80 F.3d 810, 816 n.6 (3d Cir. 1996) (explaining that the Sixth Amendment did not require unanimous verdicts in state criminal trials).

In short, the Petitioner did not have, as the federal habeas statute requires, a "clearly established" federal right to a unanimous jury as of the appellate court's January 12, 2015, decision. His claim therefore fails.[35]

---

[35] About five years after the appellate court's decision, in 2020, the Supreme Court in Ramos v. Louisiana, 590 U.S. ___, 140 S.Ct. 1390, 1397 (2020) "held that a state jury must be unanimous to convict a criminal defendant of a serious offense." Edwards, 141 S. Ct. at 1551 (discussing Ramos). But the Supreme Court has since held that this state court unanimity requirement does not apply

## VI.  **Fourth Claim: Ineffective Assistance of Counsel**

The Petitioner's final claim: his conviction violated federal law because he received constitutionally ineffective assistance of counsel, in three distinct ways.  See Petition at 11-12.  These are considered below in Parts VI.B, VI.C, VI.D, after a brief discussion in Part VI.A of the overarching legal principles here.

### A. **General Principles**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI; see generally Missouri v. Frye, 566 U.S. 134, 138 (2012) (Sixth Amendment applies in state prosecutions).

This right "is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (cleaned up).

To show this "effective assistance" right has been violated, a claimant must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced him.  See id. at 687.

As to the first prong: the claimant must show his lawyer made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." Id.

As to the second prong: the claimant must demonstrate "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Luparella v. United States, 335 F. App'x 212, 214 (3d Cir. 2009).

### B. **Procedural History**

---

retroactively to "final convictions on federal collateral review." Id.  And that is the posture in which the Petitioner raises his claim.  Accordingly, the Petitioner cannot obtain relief here from the appellate court's 2015 decision by invoking the Supreme Court's 2020 Ramos decision.  See id.; see also Hankerson, 2023 WL 3867270, at *9; Clay, 2023 WL 2789596, at *3-*4.

The Petitioner, as noted, makes three ineffective assistance of counsel claims.

Each was pressed in state court, and the claims were the subject of a three-witness evidentiary hearing. See Post-Conviction Relief Opinion[36] at 7-11; Post-Conviction Relief Hearing Transcript. Following the hearing, the court made certain factual findings and rejected the Petitioner's claims. See Post-Conviction Relief Opinion at 7-19. A state appellate court then held that the lower court judge's findings were supported by sufficient evidence, see Massenburg, 2019 WL 5853209, at *2, and also affirmed each of the lower court's ineffective assistance determinations. See id. After the state appellate court issued its ruling, the New Jersey Supreme Court declined the Petitioner's request to review his case. See Massenburg, 226 A.3d 511.

The state appellate court's decision is the relevant one here.[37] In its decision, the appellate court reviewed the Petitioner's various ineffective assistance claims, and rejected them. See Massenburg, 2019 WL 5853209, at *2.

Accordingly, the Petitioner's ineffective assistance claim can be a basis for relief here only if the state appellate court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2).[38]

## C. Ineffective Assistance: Lack Of Diligence

The first of the Petitioner's ineffective assistance of counsel claims: his trial lawyer ("Lawyer") "lacked diligence and failed to zealously represent Petitioner." Petition at 11.

But after the evidentiary hearing referred to above, the state court found the Petitioner's "numerous 20-minute meetings with

---

[36] The post-conviction relief opinion is at docket entry 7-28. As to the other court filing referenced in this section, the post-conviction relief hearing transcript is at docket entry 7-14.

[37] See footnote 28 above.

[38] The two-pronged Strickland test set out in Part VI.A above is "clearly established" for federal habeas corpus purposes. See e.g., Collins, 742 F.3d at 544; Manchas v. Superintendent of SCI Huntingdon, 428 F. App'x 184, 188 (3d Cir. 2011).

trial counsel . . . were meaningful." Post-Conviction Relief Opinion at 17. The court noted the Lawyer reviewed discovery with the Petitioner and discussed potential witnesses at those meetings with him. See id. at 8-9, 18. And the court found the Lawyer investigated potential leads, and discussed the results of his investigations with the Petitioner. See id. at 8-9.

These factual findings are all-but dispositive. In light of them, there is little basis for concluding there was any meaningful lack of diligence on the part of the Lawyer, or failure to communicate in an appropriate way.

Do the factual findings stand up? The Court must presume they are correct unless the Petitioner rebuts the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

Here, the Petitioner has not put forward evidence. See Reply at 23-24. Rather, the Petitioner presses only unsworn assertions of sub-standard lawyering. But unsworn assertions are not clear and convincing evidence.[39]

Moreover, the Petitioner's assertions here are largely generic and all-but entirely conclusory. They are not meaningfully case-specific or detailed. They do not move the needle.[40]

---

[39] See e.g., Graham v. Skipper, 2021 WL 4582162, at *6 (W.D. Mich. Oct. 6, 2021) ("Petitioner's unsworn statement, however, is not clear and convincing evidence of any of those factual averments."); Kandis v. Ballard, 2017 WL 9604641, at *8 (N.D.W. Va. Apr. 27, 2017) (finding that unsworn statements "do not reach the level of clear and convincing evidence necessary to rebut the presumption of correctness of the state court's factual findings"); Walker v. Kerestes, 2012 WL 5494683, at *9 (E.D. Pa. Oct. 25, 2012) (concluding that unsworn statements "do not constitute clear and convincing evidence").

[40] As to the insufficiency of conclusory allegations in this context, some examples: Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010); Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991); Ross v. Nogan, 2022 WL 1802853, at *13 (D.N.J. June 2, 2022); Jesus-Concepcion v. United States, 2019 WL 4127364, at *3. Some additional cases, in a slightly different vein: Gonzalez v. Rodriguez, 2013 WL 6498896, at *2 n.3 (D.N.J. Dec. 11, 2013) ("self-serving, conclusory statements . . . cannot qualify as 'clear and convincing evidence' or evidence at all") (quoting 28

In short: the state court rejected the Petitioner's first ineffective assistance of counsel claim, see Massenburg, 2019 WL 5853209, at *2, and in light of the state court's unrebutted factual findings, this was not unreasonable.

### D. Ineffective Assistance: Failure to Call Alibi Witness

The Petitioner's next ineffective assistance of counsel claim: the Lawyer should have called a particular witness ("Witness #1") testify at the trial. See Petition at 12. The Lawyer, it is alleged, "did not investigate or call [Witness #1]," who "would have been able to testify that [the Petitioner] was in North Carolina during" the time of the sexual assaults in the New Jersey apartment. Id. The Petitioner contends Witness #1's testimony would have created "reasonable doubt as to [his] guilt and [the jury] would have voted to acquit . . . on all counts." See Reply at 27.

The state appellate court denied this claim, for substantially the reasons set forth in the lower court's opinion. See Massenburg, 2019 WL 5853209, at *2; see also Post-Conviction Relief Opinion at 13-15.

This decision is the relevant one,[41] and it cannot be set aside unless it was "unreasonable." See Part II.C (citing more fully the governing standards). That is the Petitioner's showing to make. See Cullen, 563 U.S. at 181. He has not made it.

To see why, consider the state court's two foundational determinations here, see Part VI.D.1 and VI.D.2 below --- and then the state court's ultimate decision that was based on them. See Part VI.D.3 below.

### 1. The Lawyer's Investigation

As noted, the Petitioner argues the Lawyer "did not investigate or call [Witness #1][.]" Petition at 12.

But after the evidentiary hearing, the state court reached the

---

U.S.C. § 2254(e)(1)); Hawkins v. Johnson, 2010 WL 5071051, at *7 (D. Del. Dec. 7, 2010) ("[The Petitioner's] unsupported and conclusory statements do not amount to the 'clear and convincing evidence' needed to rebut the statutory presumption of correctness[.]") (quoting 28 U.S.C. § 2254(e)(1)).

41  See footnote 28 above.

opposite conclusion. The court found that "trial counsel thoroughly investigated" Witness #1 as a potential alibi witness, and did so "prior to trial." Post-Conviction Relief Opinion at 14–15. And the state court found that the "rigor" of the "pretrial investigation was conclusively established." Id. at 13.

These factual findings are presumed correct, unless by clear and convincing evidence the Petitioner rebuts that presumption. See 28 U.S.C. § 2254(e)(1); Miller-El, 545 U.S. at 240.

He has not. The Petitioner offers little beyond the unsworn assertion that his trial counsel "did not investigate or call [Witness #1]." See Petition at 11–12; Reply at 24–27.

But unsworn assertions do not count as clear and convincing evidence.[42] And even if they did, the Petitioner's assertions here are conclusory and generic.[43] They do not meaningfully reckon with the evidence at the hearing that the Lawyer did investigate Witness #1 and was in touch with her.[44]

Moreover, the Petitioner's assertions here do not address a critical piece of evidence. Namely: after being confronted with written evidence that undermined his previous assertions, the Petitioner conceded at the evidentiary hearing that the Lawyer

---

[42]  See footnote 39 above.

[43]  See footnote 40 above.

[44]  Some of this evidence comes from the Lawyer's testimony at the evidentiary hearing, as described in this footnote. The Petitioner asked the Lawyer to investigate Witness #1 in connection with a potential alibi defense. See Post-Conviction Relief Hearing Transcript at 132:4-13. The Lawyer then requested and received a trial adjournment, so he could properly investigate Witness #1. See id. at 55:1-5; 158:4-14. The Lawyer used the time to dispatch an experienced investigator to meet with Witness #1. See id. at 132:24 to 133:15. The investigator met with Witness #1, spoke with her about the substance of the alibi testimony she might offer, and attempted to get more information from her when her answers seemed vague. See id. at 135:13 to 136:25. Additionally, the investigator "made multiple phone calls" to try to re-interview Witness #1 after their initial session, but Witness #1 did not respond. See id. at 136:17-25. The investigator then prepared a report as to his interactions with Witness #1, and the Lawyer both reviewed the report and discussed it with the investigator. See id. at 134:2-15.

conducted an investigation of Witness #1. See Post-Conviction
Relief Hearing Transcript at 53:4-7, 88:13 to 89:19; see also Post-
Conviction Relief Opinion at 12-13.

In short: the state court found the Lawyer conducted a "rigor[ous]"
pre-trial investigation of Witness #1; that finding is presumed
correct; and the presumption has not been rebutted.

### 2. The Lawyer's Decision

In addition to its factual finding as to the investigation, the
state court held that the Lawyer decided not to call Witness #1
because, in the Lawyer's judgment, she would have been a "bad alibi
witness." The state court concurred, concluding that, in the
court's judgment, Witness #1 would indeed have been a "bad alibi
witness," and that therefore there was "wisdom," per the court, in
the Lawyer's "tactical decision not t[o] call" her at trial. Post-
Conviction Relief Opinion at 14-15.

### a. The State Court's Determinations

In support of its holdings set out just above, the state court
stated that Witness #1's "lack of command over specifics was amply
demonstrated" during her testimony at the evidentiary hearing.
See id. at 14. The court also observed that Witness #1 was
"equivocal concerning any specific facts," other than that the
Petitioner was with her in North Carolina, see id. --- and this
was in spite of efforts to refresh her recollection. See id. at
7-8, 10; Post-Conviction Relief Hearing Transcript at 24:10 to
25:4.

Moreover, the state court emphasized a basic difficulty with
Witness #1's account. The sexual assaults on Woman #1 and Woman
#2 took place during January of 2010. Witness #1 testified that
she learned during 2010 of the Petitioner's arrest --- and then
thought back and realized she had been with the Petitioner in
Durham, North Carolina on the relevant night. See Post-Conviction
Relief Hearing Transcript at 28:21 to 29:11; 35:3-10. But the
Petitioner was arrested in 2011, not 2010. See Post-Conviction
Relief Opinion 10. And, the court noted, Witness #1
"inconsistently testified" as to how she learned about the date on
which the sexual assaults had taken place. See id.

Finally, the court emphasized Witness #1 had a "strong bias," id.
at 15, because she was "either in a romantic relationship with the
[Petitioner] or a close friend," id., and that her account of the
Petitioner's whereabouts on the night in question (he was with her
in Durham, North Carolina) was contradicted by his parents' account

(that he was with them in Henderson, North Carolina).  See id.

### b. **The Evidentiary Basis for the State Court's Determinations**

The determinations set out just above were rooted in the evidence put forward at the hearing.  Some examples follow.

First, the Lawyer testified at the hearing about what he learned from the investigator he had dispatched to interview Witness #1. The Lawyer described the investigator's "highly negative assessment" of Witness #1.  See id. at 9, 14; Post-Conviction Relief Hearing Transcript at 135:13 to 136:25.  Witness #1's statements to the investigator "were vague," the Lawyer testified, and "she was unable to recount any . . . specific information or events during those couple days that she was with [the Petitioner]."  Post-Conviction Relief Hearing Transcript at 136:2-16.  Per the Lawyer's testimony, when the investigator pressed Witness #1 for specific information, she became "hostile" and "seemed reluctant to say anything without checking with [the Petitioner] first," and refused any attempts the investigator made to re-interview her.  See id. at 136:6-20.

In light of this, the Lawyer explained why he did not call Witness #1.  As the court summarized the Lawyer's testimony: "Based upon his 47 years of experience as a criminal defense counsel, trial counsel opined that 'a bad alibi witness is worse than no alibi witness.'"  Post-Conviction Relief Opinion at 9, 14; see also Post-Conviction Relief Hearing Transcript at 137:4-24.

In addition to the above, Witness #1 also testified at the hearing. She was asked at length about her supposed time in North Carolina with the Petitioner.  But she testified she did not remember virtually any of the basic details about the trip that would have been important to establishing her alibi testimony as credible. See Post-Conviction Relief Hearing Transcript at 16:5 to 31:15.

Finally, Witness #1 explained that after watching a news report as to the Petitioner's arrest, she was able to "track-back" and "discover[]" that he was at her house in North Carolina on the date of the New Jersey sexual assaults.  See id. at 28:21 to 29:11; 35:3-10. But Witness #1 never came forward with this information, testifying she did not "feel that it was important to alert [the Petitioner's] family or law enforcement about that," despite knowing the Petitioner's family, and having been friends with the Petitioner, since 2005.  See id. at 6:17-21, 25:21 to 26:22, 34:1-4, 35:3-13.

### 3. <u>The State Court's Decision Was Not Unreasonable</u>

Against the backdrop set out above, the state court made two bottom-line decisions.

First, the Petitioner "failed to establish that [the] tactical decision not to call . . . [Witness #1]," amounted to deficient performance, below the threshold of attorney competence established by the Supreme Court in <u>Strickland</u>. <u>See</u> Post-Conviction Relief Opinion at 15; <u>see</u> <u>generally</u> Part VI.A (describing the first prong of the <u>Strickland</u> standard).

And second, even if there was deficient performance, it did not prejudice the Petitioner. <u>See</u> <u>id</u>. at 16; <u>see</u> <u>generally</u> Part VI.A (describing the second prong of the <u>Strickland</u> standard).

As to each of these two points, the state court's decision can be set aside here only if the Petitioner shows, <u>see</u> <u>Cullen</u>, 563 U.S. at 181, the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2).

As set out below, that standard is not met.

#### a. <u>Performance</u>

One of a trial lawyer's basic strategic decisions is whether to call certain witnesses.[45]  In turn, a trial lawyer's strategic decisions can amount to deficient performance within the meaning of <u>Strickland</u>'s first prong only in limited circumstances.  Two are arguably relevant here.

The <u>first</u>: when a trial lawyer's strategic decision is not reasonably well-informed.  <u>See</u> <u>generally</u> <u>Strickland</u>, 466 U.S. at

---

[45]  <u>See, e.g.</u>, <u>United States</u> v. <u>Chapman</u>, 593 F.3d 365, 369 (4th Cir. 2010) ("which witnesses to call is a classic tactical decision left to counsel"); <u>Boyle</u> v. <u>McKune</u>, 544 F.3d 1132, 1139 (10th Cir. 2008) ("the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney"); <u>United States</u> v. <u>Smith</u>, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."); <u>United States</u> v. <u>Williams</u>, 106 F.3d 1362, 1367 (7th Cir. 1997) ("[The] decision to call or not to call a witness is a strategic decision[.]").

691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); see also Pavel v. Hollins, 261 F.3d 210, 217–18 (2d Cir. 2001).[46]

Here, the trial lawyer's decision not to call Witness #1 was sufficiently well-informed. The state court found the Lawyer conducted a "rigor[ous]" and "thorough" pre-trial investigation of Witness #1. And that factual finding stands unrebutted. See Part VI.D.1 above.

A second potentially relevant circumstance: a lawyer may make an informed strategic decision, but the decision is so far outside of the pale that it "could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). In that circumstance, a lawyer's performance may also be deficient.

But this is not this case. The Lawyer decided that Witness #1 was a "bad alibi witness." And after hearing Witness #1's live testimony at the evidentiary hearing, the state court concurred in the Lawyer's judgment, and indicated he agreed with the "wisdom" of not calling Witness #1.

The basis for the state court's conclusion is not hard to see. If Witness #1 has been called to testify, she would have been very powerfully cross-examined. First, because of her "hostile" demeanor. Second, because she could not offer meaningfully detailed testimony. Third, because of her motive to fabricate, given her relationship with the Petitioner. Fourth, because she never came forward with the alibi information she said she had. Fifth, because her account of when she learned of the date of the New Jersey sexual assaults was, among other things, badly off --- 2010 (when she says she learned of the Petitioner's arrest, from media reports) versus 2011 (when the arrest happened).

Anticipating this sort of cross-examination, there would have been ample reason for the Lawyer to believe that if Witness #1 were called to the stand, the jury would conclude she was simply making up her testimony. This would not help the Petitioner's cause.

---

[46] In some contexts, but not all, making a well-informed decision will require trial lawyers to interview potential trial witnesses before deciding whether to call them. See Moore v. DiGuglielmo, 489 F. App'x 618, 625 (3d Cir. 2012) (when investigating potential witnesses, counsel is not required to "interview every possible witness," but is "required to exercise reasonable professional judgment in deciding whether to interview [a witness]") (cleaned up).

And it would almost surely hurt it, by badly undermining the overall credibility of the defense.

In these circumstances, the state court held, not calling Witness #1 was the "wis[e]" choice. See Post-Conviction Relief Opinion at 15.

Come back now to the initial question: the state court decided the Petitioner "failed to establish that [the] tactical decision not to call . . . [Witness #1]," amounted to deficient performance; was this decision "contrary to, or involved an unreasonable application of, . . . Federal law" or "based on an unreasonable determination of the facts"? 28 U.S.C. § 2254(d)(1)–(2).

The Court's answer: no.

The constitutional standards here required of the state court a "highly deferential" review with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Jordan v. Superintendent Coal Twp. SCI, 841 F. App'x 469, 473 (3d Cir. 2021) (cleaned up). The Petitioner bore the burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Graves, 613 F. App'x 157, 159 (3d Cir. 2015) (quoting Strickland, 466 U.S. at 689). And if the record showed the Petitioner's counsel "pursued an informed strategy" to benefit his client, that was "decided upon after a thorough investigation of the relevant law and facts," the presumption becomes "virtually unchallengeable." Thomas, 428 F.3d at 499 (emphasis in original); see Jordan, 841 F. App'x at 473; Graves, 613 F. App'x at 159; see also Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020); Sanchez v. Davis, 936 F.3d 300, 305 (5th Cir. 2019); Newmiller v. Raemisch, 877 F.3d 1178, 1196 (10th Cir. 2017); Middleton v. Roper, 455 F.3d 838, 848–49 (8th Cir. 2006); Pavel, 261 F.3d at 217–18. As one Court of Appeals has put it, "[t]he decision not to call a witness is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (cleaned up).

These cases are dispositive. The Lawyer conducted a thorough pre-trial investigation. Based on this, the Lawyer decided not to call Witness #1. And the state court agreed, after an evidentiary hearing at which Witness #1, that this was a "wis[e]" strategic choice.

In these circumstances, there is nothing "unreasonable" about the state court's decision that the Lawyer acted within "the wide range of reasonable professional assistance." Strickland, 466 U.S. at

689.

b. **Prejudice**

In addition to the above, the state court concluded that even if the Lawyer had performed in a deficient manner (under the first Strickland prong), no prejudice (under the second Strickland prong) flowed from this failure.  See Post-Conviction Relief Opinion at 15.

This was not an "unreasonable" conclusion.  28 U.S.C. § 2254(d)(1)-(2).

To establish prejudice, the Petitioner bears the burden, see Strickland, 466 U.S. at 696, of showing "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.; see also Luparella, 335 F. App'x at 214.

But it is highly unlikely that a "bad" witness's testimony would have angled any jurors in the Petitioner's direction.  And putting on a "bad" and important witness --- and an alibi witness is always that --- would likely have had cascading negative impacts on the Petitioner's defense.  It would have badly undercut the defense's credibility.  And it would have displaced as a practical matter the possibility of prevailing on a more likely-to-succeed defense. See Part III.C.2 above (describing the Petitioner's trial strategy); Post-Conviction Relief Opinion at 14 ("Based upon his 47 years of experience as a criminal defense counsel, trial counsel opined that 'a bad alibi witness is worse than no alibi witness.'").

Moreover, as the state court noted, trial evidence put the Petitioner in the New Jersey apartment.  This included the testimony of Woman #1 and Man #1.  See Post-Conviction Relief Opinion at 15.  And it also included the Petitioner's DNA found in the New Jersey apartment, in a condom (Woman #1 testified at trial that the man who sexually assaulted her ejaculated in a condom) and on a cigarette butt (Woman #1 testified the man who sexually assaulted her smelled like he had been smoking).  See id.

This is a strong body of evidence.  Would it have been eroded by calling to the stand a "bad alibi witness," to the point that "confidence in the outcome" of the trial is "undermine[d]"? See Strickland, 466 U.S. at 696. The state court's answer was no.  And

41

for the reasons set out above, this conclusion was not unreasonable.

*    *    *

In sum: the relevant state court decided the Petitioner failed to make out a persuasive argument under either of the two Strickland prongs in connection with the Lawyer's decision not to call Witness #1. This decision was not "unreasonable" and did not otherwise meet the standards for habeas relief set out in 28 U.S.C. § 2254(d)(1)-(2). The Petitioner's claim therefore fails.

### E. Ineffective Assistance: Failure to Advise the Petitioner of His Right to Testify

Finally, the Petitioner argues the Lawyer was ineffective for failing to advise him of his right to testify at trial. See Petition at 11-12.[47]

The appellate court denied this claim. See Massenburg, 2019 WL 5853209, at *2. It did so for substantially the reasons set forth in the lower court's decision. Id.; see Post-Conviction Relief Opinion at 18-20.

A criminal defendant has a right to testify, see generally Rock v. Arkansas, 483 U.S. 44, 49-53 (1987), but may waive that right so long as the waiver is "knowing and intelligent." United States v. Pennycooke, 65 F.3d 9, 11-13 (3d Cir. 1995). Defense counsel has a duty to inform the defendant of his right to testify, and to advise the defendant on whether to take the stand. See id. at 13 ("[T]he duty of providing such advice and of ensuring that any waiver is knowing and intelligent rests with defense counsel.").

Here, as noted, the state court conducted an evidentiary hearing where the Petitioner and the Lawyer testified. See Post-Conviction Relief Opinion at 7-11.

After the hearing, the court found the Lawyer timely discussed with the Petitioner his right to testify. See id. 19.

The state court's factual findings are presumed correct unless the

---

[47]  The ordinary two-pronged Strickland standard applies to such claims. See Palmer v. Hendricks, 592 F.3d 386, 394, 397-98 (3d Cir. 2010); see also Ruiz v. Superintendent Huntingdon SCI, 672 F. App'x 207, 210 (3d Cir. 2016).

Petitioner rebuts that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El, 545 U.S. at 240.

Here, the Petitioner asserts that "counsel did not advise [him] of his . . . right to testify." Petition at 12, see also Reply at 27 ("Trial counsel failed to advise petitioner of his constitutional right to testify.").

But unsworn assertions do not count as clear and convincing evidence.[48] And even if they did, the Petitioner's assertions here are conclusory.[49]

Moreover, the Petitioner does not meaningfully address the strong contradictory evidence put forward at the state court hearing.[50] This evidence included the Petitioner's admission that he was told about his right to testify, as well as the Lawyer's testimony on this point, which the state court found credible. See Post-Conviction Relief Opinion at 19; Post-Conviction Relief Hearing Transcript at 141:1 to 142:18.

---

[48]  See footnote 39 above.

[49]  See footnote 40 above.

[50]  For example, the Lawyer testified at the hearing that he discussed with the Petitioner his right to testify. See Post-Conviction Relief Hearing Transcript at 141:1 to 142:18. In particular, the Lawyer testified that he advised the Petitioner that he should not testify because of his extensive criminal history, and explained to the Petitioner how that could be used to impeach him. See id. at 141:7-12. In addition, the Lawyer testified that he advised the Petitioner against testifying, because Woman #1 and Man #1 had identified him by the Petitioner's distinctive voice --- which the jury would hear if he testified. See id. at 141:13 to 142:18. Per the Lawyer's testimony, the Petitioner's response was: "[the jury is] gonna hear my voice. Yeah, I know I have a low voice." See id. at 142:2-9. Given this back and forth, the Lawyer testified he was "pretty sure" the Petitioner had agreed that he should not testify. See id. at 142:13-18. The Petitioner admitted to having these conversations with the Lawyer. See id. at 96:20 to 98:17, 110:15-25. And the Petitioner also testified that counsel advised him of his right to testify. See id. at 68:3-11 ("Q. And did [the Lawyer] ever talk to you about testifying, your right to testify? A. . . . "Yeah . . . . He told me . . . what the procedures [were], yes. Q. During trial or before trial? A. Before trial.").

Given the above, there is no basis for displacing the state court's factual finding that the Petitioner was told by the Lawyer of his right to testify.  See 28 U.S.C. § 2254(e)(1); Miller-El, 545 U.S. at 240.    Accordingly,    the    Petitioner's    final    ineffective assistance argument fails.  It is based entirely on the contention that he was not told of his right to testify.[51]

## VII.  Conclusion

For the reasons set out above, the Petition is denied.

Pursuant to 28 U.S.C. § 2253(c), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254 unless a certificate of appealability issues.  A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could   disagree   with   the   district   court's   resolution   of   his constitutional claims[.]"   Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

---

[51]   The state court found that, given his long history in the criminal justice system, the Petitioner "was well aware of his right to testify, long before he ever spoke with trial counsel." See Post-Conviction Relief Opinion at 9, 20.   Moreover, the state court found the Petitioner was present when the trial judge discussed the right to testify with the Petitioner's co-defendant, during the charge conference.   See id. 19.   All of this might mean that even if the Lawyer provided deficient assistance under the   first   Strickland   prong   (because   he   did   not   advise   the Petitioner of his right not to testify), that would not have caused prejudice   under   the   second   Strickland   prong   (because   the Petitioner already knew of his right not to testify).   Some courts have come to a conclusion along these lines.   See, e.g., Mackey v. Horton, 2022 WL 407384, at *3 (W.D. Mich. Feb. 10, 2022); Santone v. Fischer, 2010 WL 4702448, at *14 (N.D.N.Y. Sept. 13, 2010); Lowery v. United States, 2009 WL 883312, at *7 (E.D. Pa. Mar. 25, 2009); United States v. Gordon, 2004 WL 1879988, at *4 (E.D. Pa. Aug. 17, 2004).   But there is no need to reach these questions here.   The Supreme Court has held that if a claim fails under one prong of Strickland, a court need not analyze the other prong. See Strickland, 466 U.S. at 697.   In this case, for the reasons set out in the text, the Petitioner has not made a persuasive argument under the first Strickland prong.   Therefore, there is no need   for   the   Court   to   consider   prejudice   under   the   second Strickland prong.

Here, that standard is not met.   The Court will therefore not issue
a certificate of appealability.

DATE: November 29, 2023

_____
Michael E. Farbiarz, U.S.D.J.